**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ENERGY TRANSFER,<br><br>*Petitioner*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY et al.,<br><br>*Respondents*. | No. 23-3641 |
| BUCKEYE POWER *et al.*<br><br>*Petitioner*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY et al.,<br><br>*Respondents*. | No. 23-3647 |

**ATTACHMENTS OF MOVANT-INTERVENORS APPALACHIAN MOUNTAIN CLUB, THE OHIO ENVIRONMENTAL COUNCIL, AND SIERRA CLUB**

## DECLARATIONS

Janiece Brock ........ ATT-01
Huda Fashho ........ ATT-05
Hannah Lee Flath ........ ATT-07
Jonathan Levenshus ........ ATT-11
Scott Redfern ........ ATT-14
Verena Owen ........ ATT-17
Mary Lyn Stoll ........ ATT-18
Chris Tavenor ........ ATT-21

## ORDERS

Order, Utah v. EPA, No. 23-1157 (and consolidated)
(D.C. Cir. Aug. 10, 2023) ........ ATT-30
Order at 2, Dayon Power & Light Co. v. FERC, No. 21-4072 (and consolidated)
(6th Cir. Aug. 9, 2023) ........ ATT-32
Order, Texas v. EPA, No. 23-60300
(5th Cir. July 6, 2023) ........ ATT-35
Order, Wisconsin v. EPA, No. 16-1406 (and consolidated cases)
(D.C. Cir. Jan. 31, 2017) ........ ATT-38
Order, EME Homer City Generation, L.P. v. EPA, No. 11-1302 (and consolidated)
(D.C. Cir. Oct. 12, 2011) ........ ATT-40

## PETITION FOR REVIEW

Ohio Valley Electric Corporation, Petition for Review, Associated Electric
Cooperative, et al. v. EPA, No. 23-1195 (D.C. Cir. July 27, 2023) ........ ATT-42

**DECLARATION OF JENIECE BROCK
FOR THE OHIO ENVIRONMENTAL COUNCIL**

I, Jeniece L. Brock, hereby declare and state as follows:

1. This declaration is based on my personal knowledge. I am over the age of eighteen (18) and suffer no legal incapacity.

2. I am a member of the Ohio Environmental Council ("the OEC").

3. I submit this declaration in support of the OEC's intervention in litigation to defend the Federal Good Neighbor Plan for the 2015 Ozone NAAQS, which was finalized by the U.S. Environmental Protection Agency ("U.S. EPA") to address air pollution transported across state lines.

4. I am 35 years old.

5. I have asthma and environmental allergies.

6. I currently reside in Summit County, Ohio at 1463 Apple Court, Akron, OH 44306. I have lived in Summit County since 1988.

7. On summer days, I engage in spending time with family at parades and festivals, outdoor recreation, lawn care and routine exercise outdoors.

8. I plan to continue being active outdoors on summer days in the future.

9. I have been involved with public health issues for a long time and am most recently concerned about the 132,425 people of color, 112,034 children, 101,679 adults over the age of 65, 65,938 people experiencing poverty, and 5,799

pregnant individuals who are all at risk due to the air quality in Summit county (according to the American Lung Association).

10. As a member of the OEC, I understand that the OEC engages in advocacy and legal action to protect Ohio's air, land, and water. The OEC's current activities include efforts to reduce emissions of air pollutants to protect and improve air quality, and working to reduce Ohioans' exposure to harmful air pollution is a core part of the OEC's mission.

11. I understand that the OEC seeks to intervene in a lawsuit challenging U.S. EPA's rule limiting emissions of the air pollutants that cause ozone pollution to be formed and transported across state lines.

12. I am aware that ground-level ozone, the main ingredient in smog, irritates the respiratory system, reduces lung function, and aggravates asthma and other chronic lung diseases.

13. I understand that U.S. EPA designates "nonattainment" areas in counties where measured air quality information shows that air quality fails to meet the National Ambient Air Quality Standards that have been adopted to protect public health, particularly for at risk, underserved, Black and Brown communities, and people like me who have asthma and environmental allergies and are more vulnerable to the effects of air pollution. I further understand that the air in Summit County is not clean enough to comply with the 2015 ozone standard and

has even been designated as a "maintenance" area for the previous 2008 standard because it is at risk of exceeding that standard as well. According to EPA, some of the ozone pollution in Summit County is caused by emissions from upwind states, including Illinois, Indiana, Michigan, and West Virginia. I also understand that, according to EPA, emissions from Ohio, including sources near me that affect local air quality, contribute to ozone pollution in downwind counties in Connecticut that have been designated as being in "nonattainment" of the 2015 ozone NAAQS. It concerns me that the air where I live may make me vulnerable to respiratory problems when I am active outdoors.

14. I understand that a final rule was published on June 5, 2023, to ensure emissions from upwind states, including Ohio, do not significantly contribute to problems attaining or maintaining the ozone standards in downwind states.

15. I further understand that the U.S. EPA's rule would reduce air pollution that is emitted by sources in Ohio that affects local air quality, and would reduce air pollution from sources in other states that is transported over state lines into Ohio, including into Summit County where I live.

16. I am concerned that without this rule, industrial sources will be allowed to emit excess air pollution that affects air quality and contributes to harmful ozone levels in Summit County.

17. This rule will benefit my interest in breathing cleaner air when I take out my trash, walk around my neighborhood, exercise, or spend time with my family during parades and festivals. I therefore support the OEC's intervention to defend the Federal Good Neighbor Plan for the 2015 Ozone National Ambient Air Quality Standards.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on September 5, 2023.

Jeniece L. Brock

Jeniece L. Brock, MSHS

# DECLARATION OF HUDA FASHHO

I, Huda Fashho, hereby declare and state as follows:

1. The Sierra Club is a non-profit membership organization, headquartered in Oakland, California. The Sierra Club's purpose is to practice and promote the responsible use of the earth's ecosystems and resources, to educate and enlist humanity to protect and restore the quality of the natural and human environment, and to use all lawful means to carry out these objectives.

2. I am the Senior Managing Director of Member Care at the Sierra Club. I have had this position for twelve years.

3. In this role, I manage the Sierra Club's customer service functions related to members, including maintaining an accurate list of members and managing the organization's member databases.

4. When an individual becomes a member of the Sierra Club, his or her current residential address is recorded in our membership database. The database entry reflecting the member's residential address is verified or updated as needed.

5. The Sierra Club currently has 715,278 members nationally, including members in the following states:

- Alabama – 3,652 members
- Arizona – 14,832 members
- Arkansas – 2,829 members

- California – 156,412 members
- Colorado – 20,776 members
- Connecticut – 10,002 members
- Illinois – 29,944 members
- Indiana – 9,253 members
- Kentucky – 5,625 members
- Louisiana – 2,970 members
- Maryland – 15,316 members
- Michigan – 20,211 members
- Minnesota – 15,843 members
- Mississippi – 1,478 members
- Missouri – 10,711 members
- Nevada – 15,414 members
- New Jersey – 18,616 members
- New Mexico – 8,589 members
- New York – 42,578 members
- Ohio – 19,994 members
- Oklahoma – 3,537 members
- Texas – 24,074 members

- Utah – 4,731 members
- West Virginia – 2,315 members
- Wisconsin – 18,199 members

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 24, 2023, in Fairfield, California.

Huda Fashho

# DECLARATION OF HANNAH LEE FLATH

I, Hannah Lee Flath, hereby declare and state as follows:

1. My name is Hannah Lee Flath. I am 28 years old, and competent to give this declaration. All information herein is true and based on my own personal knowledge.

2. I am a resident of Chicago, Illinois, where I have lived since July 2020.

3. I am a member of the Sierra Club. In fact, I serve as the Communications Coordinator for the Sierra Club's Illinois Chapter, a role I have filled for two years. I support the Sierra Club's mission to protect the environment and public health, and in particular, I am concerned about air quality.

4. I really enjoy spending time outside. I consider myself a runner, and I am very fortunate to live near multiple great outside spaces in Chicago, like the 606–a former elevated train line that has been converted into a pedestrian path for walking, biking, and running–and Humboldt Park, a huge local park with swan boats and a public beach. Getting to spend time in these spaces running and recreating is part of why I enjoy living in Chicago so much.

5. I have suffered from chronic bronchitis since I was a teenager. I have experienced it in on-and-off bouts over the past decade, and some of those bouts

have been quite serious, requiring hospitalization. As part of managing my condition, I use an inhaler.

6. As a result of my chronic bronchitis, I pay very close attention to air quality. Part of my daily evening routine involves not only checking the weather forecast for the next day, but also checking whether or not there are any forecasted air quality index (or "AQI") alerts. I spend a lot of mental resources keeping track of air quality, including monitoring AQI in my area, out of concerns for my health.

7. Though I greatly enjoy spending time outside for both leisure and exercise, I can't do that on days when air quality is poor. When there is more pollution in the air, I have to avoid spending time outside, and I run the risk of having to use my inhaler. As an example, we've had multiple bad air quality days here in Chicago this summer, and I got really sick during those days. Air quality (or the lack thereof) thus plays a huge role in my health and quality of life.

8. In fact, while I truly love living in Chicago, I worry that I may have to move away someday because of the threat that poor air quality poses to my health.

9. I am aware that the U.S. EPA has issued a rule, the "Good Neighbor Plan," that would require industrial sources of air pollutants that lead to elevated levels of ozone, or smog, to reduce the amount of pollution they emit during the warmer months of the year. My understanding is that sources in Illinois and other states that contribute to ozone-related air quality problems in Chicago and other

areas would be required to reduce ozone-causing pollution under this rule. I support this rule, and efforts like it to clean up the air that I and others breathe.

10. I am also aware that this rule is being challenged in court, and that the Sierra Club is seeking to defend the rule against those challenges.

11. If the Good Neighbor Plan rule were to go into effect, there would be less air pollution afflicting my community. As a result, I would be able to spend more time outside, and I'd worry less about my health. I'd also be able to avoid devoting so many mental resources towards protecting myself against air pollution that could aggravate my chronic bronchitis. Conversely, if the rule does not go into effect, or is delayed or weakened, I would continue to suffer from the threats poor air quality poses to my health and enjoyment of life.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 1, 2023 Hannah Lee Flath

**DECLARATION OF JONATHAN LEVENSHUS**

I, Jonathan Levenshus, hereby declare and state as follows:

1. I am the Sierra Club's Director of Federal Energy Campaigns for the Sierra Club. I am responsible for overseeing the Sierra Club's campaign operations across the United States, including in those suffering from unsafe ground-level ozone pollution. I live in Indianapolis, Indiana. The following information is within my personal knowledge.

2. The Sierra Club is a national, non-profit organization existing under the laws of California, with its principal place of business in Oakland, California. The Club's purposes are to explore, enjoy, and protect the wild places of the Earth; to practice and promote the responsible use of the Earth's ecosystems and resources; to educate and enlist humanity in the protection and restoration of the quality of the natural and human environment; and to use all lawful means to carry out these objectives. Sierra Club members are greatly concerned about air quality, and the Club has a long history of involvement in air quality related activities on both the local and national levels.

3. I have worked at the Sierra Club since 2013. In my position, I am responsible for directing the activities of the Sierra Club's federal energy campaigns throughout the country. These activities include community outreach, public education, lobbying, and litigation. In order to perform the responsibilities of my job, my staff and I interact on a daily basis with the Sierra Club's members in states throughout the U.S. Because of my position and responsibilities, and through my regular interaction with members, I am familiar with the Sierra Club's purpose, organization, and activities, and with the environmental interests and concerns of Sierra Club members.

4. I understand that the United States Environmental Protection Agency, or EPA, recently finalized a nationwide rule called the "Good Neighbor Plan" to address the pollution contributions that 23 states make towards ambient concentrations of ground-level ozone, or smog, in downwind states. My understanding is that EPA modeling showed that emissions of ozone precursor pollution in those states contributed significantly toward ambient ozone in downwind states, and that the upwind states' plans did not include adequate permanent and enforceable reductions in their emissions of ozone precursor pollution, such as nitrogen oxides, or NOx. I likewise understand that the Good Neighbor Plan would result in enormous benefits to public health and the environment by reducing the amount of smog during ozone season.

5. From my work, I understand that ground-level ozone is harmful to human health, particularly to the health of people with asthma, children, older adults, and people who spend a lot of time outdoors. I'm also aware that elevated levels of ozone are harmful for the natural environment, too, including by negatively impacting sensitive vegetation during the growing season.

6. The Sierra Club has hundreds of thousands of members in the U.S., including tens of thousands in the states that EPA found failed to address their cross-state ozone pollution contributions, and in the downwind states that continue to receive that pollution. Sierra Club members are harmed by this air pollution because it impacts their health, and their ability to experience and enjoy the natural environment. As a result, our members and the Sierra Club as a whole are very concerned with threats to air quality, and in the proper implementation of laws intended to protect air quality.

7. In fact, Sierra Club has expended its resources addressing air pollution issues, particularly those issues related to ozone. For example, Sierra Club has sought to inform the public about the

health impacts of ozone air pollution, including increased asthma, using larger than life size images of asthma inhalers at public events where we discuss the issue with members of the public. Similarly, Sierra Club has worked extensively on interstate air pollution transport issues, particularly those concerning ozone impacts in downwind states flowing from power plant emissions in upwind states, educating the public and seeking solutions to these pollution problems. Likewise, the Sierra Club has engaged in litigation where emitters, states, and the federal government have fallen short of requirements in laws like the Clean Air Act intended to protect the public and the environment.

8. Addressing and resolving interstate ozone pollution transport is a priority for the Sierra Club, and defending EPA's Good Neighbor Plan would advance the interests of the Sierra Club's members, and help protect those members from unsafe levels of air pollution. Moreover, the Sierra Club has an interest in ensuring that, consistent with the Clean Air Act, when EPA takes an action of national scope and impact, the action is reviewed in a single correct venue so that Sierra Club does not have to engage in inefficiently duplicative litigation activities across multiple forums.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

Executed June 28, 2023

Jonathan Levenshus

# DECLARATION OF SCOTT REDFERN

I, Scott Redfern, hereby declare as follows:

1. I live in Fairfield County, Connecticut with my wife and adult daughter. I've lived here for almost 35 years.
2. I am a member of the Appalachian Mountain Club and have been for the last 12 years. I am also a member of the Aspetuck Land Trust here in Fairfield County, the Appalachian Trail Conservancy, and The Nature Conservancy.
3. I enjoy spending time outdoors and I spend as much time outdoors as possible. I hike on Connecticut's state-maintained trails at least weekly. I go running about 3 times a week, either from my home or at a local park. My wife and I walk to a local park and walk the trails there almost every day. We also go kayaking 3 or 4 times a year locally on Lake Wintergreen in West Rock Ridge State Park, Great Hollow Lake, and Lake Zoar. And in the winter, when there is enough snow, we go snowshoeing in Connecticut.
4. I also take multi-day backpacking trips 3 or 4 times a year. I'm working my way along the Appalachian Trail. So far, I've hiked 1,700 miles of it, from Maine to the Virginia/Tennessee border, including the sections in Connecticut, New York, New Jersey, Pennsylvania, Maryland, West Virginia, and Virginia. My son and I are also working on climbing the high points in each of the lower 49 states. We go about 5 or 6 times a year. We've climbed the high points in for example California, Maryland, Nevada, New York, New Jersey, Pennsylvania, Texas, Virginia, and West Virginia, and we still have many states to go, including Alabama, Arkansas, Arizona, Illinois, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Mississippi, New Mexico, Ohio, Oklahoma, Tennessee, Utah, and Wisconsin.

5. I'm concerned about ozone pollution. I can feel the impact of poor air quality when I am spending time outdoors. My chest feels tight and I have difficulty getting a full breath of air. I feel like I am laboring to breathe more than I normally do. This is uncomfortable, and I enjoy being outdoors less when I feel these effects. I've had to abandon backpacking trips because of poor air quality. I also have had to cut my runs short on high ozone days because I feel like my breathing is strained and I'm not getting enough air. I notice these impacts most during the summer months.
6. I'm also concerned about air pollution because of poor visibility which detracts from my backpacking and mountain climbing activities, and my hiking in Connecticut. I enjoy getting to the top of the mountain and looking far off across the landscape. I look forward to clear days. I'm disappointed when visibility is limited, and I see the haze of the air pollution instead.
7. I'm also concerned about the long-term effects of air pollution, including ozone pollution, on my health. I worry about the effect it will have on my lungs and respiratory system. Cancer is hereditary in my family, and I understand air pollution stresses the body and can contribute to health harms, including cancer. I worry that my exposure to air pollution may increase my risk of developing cancer in the future, particularly since I am predisposed.
8. As a result, I pay attention to air quality when I'm planning to spend time outdoors. I have alerts turned on for my phone from The Weather Channel app that let me know when the air quality is poor. I stay indoors more during times when ozone levels are high. I try to run in the mornings, and if I have outdoor activities planned in the afternoon when air quality is bad, I will rearrange my day to avoid being outdoors during the afternoon, shorten those activities, or cancel altogether.

9. I am aware that Fairfield County is in nonattainment of the 2015 ozone standard and that, according to EPA, the ozone pollution in Connecticut comes from several upwind states including Illinois, Indiana, Kentucky, Maryland, Minnesota, New Jersey, New York, Ohio, Pennsylvania, Virginia, and West Virginia. I've noticed that we have more prolonged periods of high heat, combined with poor air quality and high ozone levels every year.
10. Reduced ozone pollution where I live and where I spend time outdoors would benefit me. With lower levels of air pollution, including ozone pollution, I would feel less tightness in my chest when I backpack and run. I wouldn't have to abandon or curtail these activities as much. I would be able to breathe easier and I would enjoy these activities more as a result. With more clear days, I would also enjoy the views when backpacking or mountain climbing more. Most importantly, I would worry less about the effects of my exposure to air pollution on my health.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed in Fairfield County, Connecticut, on June 30, 2023

Scott Redfern

# DECLARATION OF VERENA OWEN

I, Verena Owen, hereby declare as follows:

1. I am 66 years old and competent to give this declaration. I have personal knowledge of the following facts, and if called as a witness could testify competently to them. As to those matters which reflect an opinion, they reflect my personal experience, opinion and judgement on the matter.

2. I live in Winthrop Harbor, Illinois, just south of Kenosha, Wisconsin, and about one mile from Lake Michigan, and about an hour north of Chicago.

3. I am an active member of the Sierra Club and have been a member since 1991. I got involved with the Sierra Club because I am passionate about its mission to protect the environment and public health. I am the Volunteer Co-Leader of Sierra Club's National Beyond Coal Campaign, In that role, I helped co-found the Beyond Coal Campaign in 2002, when other Illinois Sierra Club volunteers and I began to see more and more proposals for new coal plants popping up in the backyards of communities across Illinois and Wisconsin. Together, with other Sierra Club volunteers, we began tracking coal plant permits and participating in regulatory and rulemaking proceedings across the country to stop the build out of new coal plants and push highly-polluting, existing coal and fossil-fuel burning power plants to clean up their pollution or transition to clean energy. I have also spoken in support of strengthening air pollution standards in

numerous EPA and state rulemakings, including EPA's 2010 public hearings in Chicago regarding the Transport Rule.

4. Given my volunteer experience as part of the Sierra Club's Beyond Coal Campaign for more than 20 years, I know that fossil-fuel burning power plants and other industrial sources emit significant amounts of nitrogen oxides, which can contribute to the formation of harmful ground-level smog or ozone, both in the vicinity of those power plants and sometimes hundreds of miles away.

5. I'm also aware that EPA has determined that air quality in Lake County, Illinois, where I live, and several nearby counties in Illinois and Wisconsin, fail to meet national safeguards for ozone pollution, meaning that the air is unhealthy to breathe. I know that, according to EPA and air quality modeling, high concentrations of ozone pollution in Illinois and Wisconsin are due, in part, to air pollution from power plants hundreds of miles away, in states like Texas, Missouri, Ohio, Kentucky, and others. Smog also causes hazy skies and visibility impairment in places like Chicago, where I regularly travel for volunteer work and recreation.

6. I am deeply concerned about smog and poor air quality in my community and in the broader Chicago area. While I personally do not have respiratory issues, I do have a heart condition which research shows can be exacerbated by ozone pollution. Additionally, my husband is sensitive to the

respiratory effects of ozone pollution and experiences a heavy feeling in his lungs on days when the air quality index ("AQI") is high. I often tell him to take it easy or to go home and this limits our ability to enjoy outdoor activities.

7. I worry about my health as well as the health of my husband. As a result, I frequently monitor the air quality in my area. I use a smart phone app and subscribe to email updates from AirNow, each of which notifies me when air pollution is bad in my area – to plan our daily activities. Although we love to go for walks along Lake Michigan, hikes and bike rides in our community, and garden, we avoid going outdoors on days when the air quality is bad and ozone levels are high. We also enjoy going to farmers markets or going shopping in Kenosha, and our doctor's office is also in Kenosha. I also regularly travel to Chicago to attend social or cultural events as well as visiting the Sierra Club office. But I avoid those activities, if I can, when air quality is poor. Sometimes, however, I have to go into the Chicago office or shopping, and I'm unable to avoid being exposed to elevated smog levels, which makes me concerned for my health and my husband's well being. It's also disappointing to see smog in places like Chicago, and it makes me sad to know that a large portion of that smog could be eliminated if we reduced our reliance on fossil-fuel burning energy generation.

8. I would like to enjoy regular outside activities such as biking, hiking, and gardening, but we have to avoid those activities on bad air days. My residence

in Winthrop is about a mile from Lake Michigan and about three blocks from Wisconsin border. I enjoy taking walks along the lakeshore. On clear days, I can distinctly see the Chicago skyline about 50 miles south. When smog pollution levels are high, the entirety of the skyline is sometimes obscured, which is incredibly disappointing to me.

9. I understand that EPA has issued a rule that would reduce smog pollution in Illinois and Wisconsin by requiring power plants and other sources of ozone-forming pollution in other states to do their fair share to reduce pollution. And I know that Sierra Club advocated for such protections, and is supporting EPA against legal challenges from industry. I support EPA's regulations and Sierra Club's effort to support those regulations because the rule would benefit my health and my family, and improve my ability to spend time outdoors hiking, biking, gardening, and enjoying nature and the outdoors generally.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 3/16/2023

Verena Owen

**DECLARATION OF MARY LYN STOLL**

1. My name is Mary Lyn Stoll. I am 49 years old and competent to give this declaration. All information herein is based on my own personal knowledge.

2. I live in the town of Evansville, Indiana. I have lived in Evansville since 2005. I am a professor at a state university. When school is out for the summer, I spend time in Akron, Ohio, where my partner lives.

3. I am an active member of Sierra Club. I have volunteered with Sierra Club's local Beyond Coal Campaign group for many years. I have been drawn to volunteer with Sierra Club partly to protect my own health, and also out of concern about climate change and a commitment to environmental justice. I firmly believe that I have a moral duty to help improve the environment and public health. I have never been a paid employee of Sierra Club.

4. I have been substantially challenged by the air quality in Evansville. I was diagnosed with asthma as a child, but I never had to get consistent treatment until I moved to Evansville. My main challenges are that I have chronically inflamed lungs and a chronically sore throat. Small "triggers" will push my consistent levels of inflammation into something more dangerous and harmful. One of those "triggers" is air pollution. Other "triggers" are mold, grass pollen, or sometimes very bad smells, like sewage.

5. I now have to take a daily preventative steroid to manage my asthma. Additionally, I always make sure to keep my emergency inhaler with me and I worry that if I forget it, I won't be able to breathe. The steroid I have to take causes side effects that hinder my quality of life. One of the side effects of the steroid I take is that it makes me anxious and it's therefore harder to fall asleep. I also worry that there might be long-term implications for taking this steroid. I would of course prefer not having to taking my asthma medication, but I need it to live my life.

6. I spend time outdoors. I walk outside for at least one hour a few days each week, often on a path in Evansville along the Ohio River. I also like to walk on a path from the University of Southern Indiana campus, where I work, to Burdette Park, which is also in Evansville. Once or twice a month, I will hike at one of the parks in the area such as Harmonie State Park, the Hoosier National Forest, or at the Audubon State Park, which is in Kentucky. I always keep my inhaler on me during any of these walks. Even on the short walk from the parking lot at work to my office, I have often had to use my emergency inhaler. I have had to use it when driving. I almost never avoid doing an outdoor activity entirely because of air quality, but I will pause to take my medications, and sometimes my inflamed lungs or throat will ruin the fun of my activity. When I am walking or

hiking to relieve stress, being forced to stop in my tracks unable to breathe, has the opposite of the desired outcome.

7. I live close to several coal-burning power plants. In fact, everywhere I look there seems to be a coal-burning power plant. There is one that I can see from my work, which is the A.B. Brown coal-burning plant. The Culley and Warrick coal-burning plants are both just east of Evansville. The Gibson and Petersburg coal-burning plants are also nearby in the region. There are other coal-burning plants across the river in Kentucky. When I'm driving out of town, and go by the Petersburg plant, I'll often feel a need to use my inhaler. When I drive by that coal plant, I need to keep the inhaler on the passenger seat, close at hand.

8. Air pollution and thinking about breathing causes me stress. My dad died from complications of Non-Hodgkin's lymphoma treatment. The last several years of his life, he suffered from lungs that were filled with fluid. I saw my dad go into acute respiratory failure. Watching him experience hallucinations during respiratory failure was one of the most frightening experiences of my life. While my illness is different, that experience has caused me to fear for my own health and to worry about not being able to breathe. It is also frustrating to constantly have to think about avoiding "triggers" for asthma, one of which is air pollution. It is a mental-health harm for me to know that my society does not really care if I can

breathe; my fellow citizens often seem to care more about letting others pollute the air, a known and proven danger, than about my ability to simply breathe at all.

9. I am aware that the U.S. EPA has issued a rule that would reduce ozone-forming pollution in Indiana and other states that contribute to smog pollution in Indiana. I support such regulations that would benefit my health and other people who suffer from respiratory disease, and that would improve my ability to enjoy the time I spend outdoors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 3/28/2023

Mary Lyn Stoll

Mary Lyn Stoll

**DECLARATION OF CHRIS TAVENOR**
**FOR THE OHIO ENVIRONMENTAL COUNCIL**

I, Chris Tavenor, declare as follows:

1. This declaration is based on my personal and professional knowledge, information, and belief. I am over the age of eighteen years and suffer from no legal incapacity. I submit this declaration in support of the Ohio Environmental Council's ("the OEC") intervention in litigation to defend the Federal Good Neighbor Plan for the 2015 Ozone NAAQS which was finalized by the U.S. Environmental Protection Agency ("U.S. EPA") to address air pollution transported across state lines.

2. I am the Associate General Counsel for the OEC, which is a nonprofit organization, organized and existing under the laws of the State of Ohio. In that capacity I am familiar with the OEC's mission, which is to secure healthy air, land, and water for all who call Ohio home. Working to reduce Ohioans' exposure to harmful air pollution is a core part of the OEC's mission.

3. My work at the OEC includes responsibility for the legal programs of the Ohio Environmental Council, supporting all our attorneys and policy staff on their programs. I also coordinate all internal legal work for the organization, from compliance to contract review. I am familiar with all areas of our work, and engage regularly with our membership and board of directors.

4. As Associate General Counsel, I am responsible for the legal oversight and compliance of the organization, and I am the chief legal analyst and advocate for the OEC's Democracy policy program. I have held these responsibilities since 2022. In that capacity, I am required to be familiar with the OEC's purpose, organization, and activities, as well as environmental interests and related activities and concerns of the OEC's members.

5. The OEC is a statewide, non-partisan, non-profit, charitable organization comprised of a network of nearly 100 affiliated member groups and over 3,000 individual members—the vast majority of whom presently reside in Ohio.

6. I am aware of the harmful effects of ground-level ozone on human health and the environment, which are well-documented in scientific literature and government publications. I understand that ground-level ozone, the main ingredient in smog, irritates the respiratory system, reduces lung function, and inflames and damages cells that line the lungs, which makes them more susceptible to infections and aggravates asthma and other chronic lung diseases.

7. Through my work at the OEC, I understand that the U.S. EPA sets minimum standards for exposure to ozone air pollution, known as the National Ambient Air Quality Standards for ozone ("ozone NAAQS"), and periodically updates those standards. I understand that the ozone NAAQS was updated in

2015, and that there are areas in Ohio that have not met the 2015 standard.

8. Through my work at the OEC, I am aware that Cuyahoga County, Geauga County, Lake County, Lorain County, Medina County, Portage County, and Summit County in Ohio have been designated as being in "nonattainment" of the 2015 ozone NAAQS, and that EPA identified Lake County as having a "violating monitor" maintenance-only receptor due to its recent high ozone levels. I understand that, according to the EPA, some of the ozone pollution in those Ohio counties is caused by emissions from upwind states, including Indiana, Michigan, and West Virginia. I also understand that, according to the EPA, emissions from Ohio contribute to ozone pollution in downwind counties in Connecticut that have been designated as being in "nonattainment" of the 2015 ozone NAAQS.

9. Through my work at the OEC, I am aware that the OEC has 240 members in Cuyahoga County, 27 members in Geauga County, 33 members in Lake County, 39 members in Lorain County, 29 members in Medina County, 28 members in Portage County, and 66 members in Summit County.

10. As a result of my work at the OEC, I am aware that coal-fired electric power plants, including those located in the Ohio River Valley, and near the homes of many of the OEC's members, have been among the largest sources of emissions of nitrogen oxides, which combine with volatile organic compounds

to form ground-level ozone.

11. Through my work at the OEC, I understand that on June 5, 2023, a final rule to address upwind emissions of the air pollution that causes downwind states to exceed or have difficulty maintaining the 2015 ozone NAAQS was published in the Federal Register, and that rule went into effect on August 4, 2023.

12. I am concerned that a successful challenge to the federal implementation plans addressing states' interstate transport obligations would allow industrial sources, particularly those in Ohio, to emit excess air pollution that affects local air quality and harms residents of Ohio, and that the OEC's members in counties designated nonattainment will be exposed to high levels of ozone as a result.

13. The OEC supports timely implementation of the 2015 ozone NAAQS, including with regard to interstate pollution, and opposes any attempt to prevent the required steps toward full implementation. I therefore support the OEC's intervention in this litigation to defend this rule, which would address air pollution by limiting emissions from sources within and outside of Ohio.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated this 1st day of September 5, 2023.



Chris Tavenor

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 23-1157** **September Term, 2022**

**EPA-88FR36654**

**Filed On:** August 10, 2023

State of Utah, by and through its Governor, Spencer J. Cox, and its Attorney General, Sean D. Reyes,

Petitioner

v.

Environmental Protection Agency and Michael S. Regan, Administrator, U.S. EPA,

Respondents

------------------------------

City of New York, et al.,
Intervenors

------------------------------

Consolidated with 23-1181, 23-1183, 23-1190, 23-1191, 23-1193, 23-1195, 23-1199, 23-1200, 23-1201, 23-1202, 23-1203, 23-1205, 23-1206, 23-1207, 23-1208, 23-1209, 23-1211

**BEFORE:** Wilkins and Walker, Circuit Judges

## ORDER

Upon consideration of respondents' motion to file a consolidated opposition exceeding the word limit in response to the motions for a stay; and the motion to intervene filed by Air Alliance Houston, Appalachian Mountain Club, Center for Biological Diversity, Chesapeake Bay Foundation, Citizens for Pennsylvania's Future, Clean Air Council, Clean Wisconsin, Downwinders at Risk, Environmental Defense Fund, Louisiana Environmental Action Network, Sierra Club, Southern Utah Wilderness Alliance, and Utah Physicians for a Healthy Environment, the opposition thereto, and the reply, it is

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-1157** **September Term, 2022**

**ORDERED** that respondents must file a consolidated opposition to the motions for a stay in No. 23-1181, No. 23-1183, No. 23-1190, No. 23-1191, No. 23-1193, No. 23-1195, No. 23-1199, and No. 23-1202, not to exceed 14,300 words. It is

**FURTHER ORDERED** that the motion to intervene be granted. See Fed. R. App. P. 15(d).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Amy Yacisin
Deputy Clerk

Nos. 21-4072, 22-3351, 23-3196/3324/3366/341

FILED
Aug 9, 2023
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAYTON POWER & LIGHT COMPANY, dba AES Ohio (Nos. 21-4072 & 22-3351), AMERICAN ELECTRIC POWER SERVICE CORPORATION (Nos. 23-3196 & 23-3366), OFFICE OF THE OHIO CONSUMERS' COUNSEL (Nos. 23-3324 & 23-3417),

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

O R D E R

Before: MOORE, STRANCH, and BUSH, Circuit Judges.

In two groups of recent decisions, the Federal Energy Regulatory Commission addressed whether providers of electricity transmission service in Ohio were eligible for Regional Transmission Organization Adders: *Dayton Power & Light Co.*, 176 FERC ¶ 61025 (2021) ("*Dayton I*"), *Dayton Power & Light Co.*, 176 FERC ¶ 62136 (2021) ("*Dayton II*"), and *Dayton Power & Light Co.*, 178 FERC ¶ 61102 (2022) ("*Dayton III*"); and *Office of Ohio Consumers' Counsel v. American Electric Power Service Corp.*, No. EL22-34, 181 FERC ¶ 61214 ("*OCC I*"), *Office of Ohio Consumers' Counsel v. American Electric Power Service Corp.*, 182 FERC ¶ 62095 (2023) ("*OCC II*"), and *Office of Ohio Consumers' Counsel v. American Electric Power Service*

*Corp.*, 183 FERC ¶ 61034 (2023) ("*OCC III*"). These decisions resulted in six petitions for review: two from Dayton Power & Light Co. challenging *Dayton I*, *II*, and *III*; two from American Electric Power Service Corporation ("AEPSC") challenging *OCC I*, *II*, and *III*; and two from the Office of Ohio Consumers' Counsel ("the OCC") challenging *OCC I*, *II*, and *III*. Numerous entities move to intervene in one or more of these petitions: the OCC; AEPSC; the Public Utilities Commission of Ohio's Office of the Federal Energy Advocate ("PUCO"); PJM Interconnection, L.L.C. ("PJM"); Duke Energy Ohio, Inc.; FirstEnergy Service Company; Buckeye Power, Inc.; and MISO Transmission Owners. No party or proposed intervenor has responded to any of the motions to intervene.

A party seeking to intervene in an appeal from an agency determination must move to intervene within thirty days after the petition for review is filed, provide a concise statement of its interest in the action, and concisely state its grounds for intervention. Fed. R. App. P. 15(d). Although Rule 15 does not provide a standard governing intervention, "the policies underlying" the rules governing intervention in the district courts under Federal Rule of Civil Procedure 24 "may be applicable in appellate courts." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965); *see also Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) ("This court may grant the motion to intervene pursuant to [Fed. R. Civ. P.] 24.").

A party may intervene as a matter of right if a federal statute confers "an unconditional right to intervene." Fed. R. Civ. P. 24(a)(1). A party may also intervene as a matter of right if it "claims an interest relating to . . . the action, and is so situated that disposing of the action may . . . impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see Blackwell*, 467 F.3d at 1006–07. A party's interest in the proceedings "is to be construed liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). Establishing impairment of an interest and inadequate representation are both

"minimal" burdens, requiring the party to show only that representation of his interest "may be" inadequate. *Blackwell*, 467 F.3d at 1007−08 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

Movants here easily qualify for intervention as a matter of right. Each movant sought intervention within thirty days of the filing of the petition for review. *See* Fed. R. App. P. 26(a)(1)(C). Each movant is statutorily authorized to intervene because it was a party to or intervened in the proceedings below. *See* 16 U.S.C. § 825*l*(b) (providing that "[a]ny party to a proceeding . . . aggrieved by an order issued by the Commission in such proceeding may obtain review of such order" in the court of appeals); *see also Scofield*, 382 U.S. at 208 (holding that Congress intended to "confer intervention rights upon the successful party . . . in the court in which the unsuccessful party challenges the [agency] decision"). And, even if the movants were not statutorily entitled to intervene, they have an indisputable interest in the proceedings and have met their minimal burden of demonstrating that their interests might be impaired or inadequately represented.

Accordingly, the motions to intervene are **GRANTED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

July 06, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 23-60300 State of Texas v. EPA
USDC No. 88 Fed. Reg. 36654

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: ____________________
Allison G. Lopez, Deputy Clerk
504-310-7702

Mr. Michael Abrams
Ms. Courtney Burdette
Mr. William Francis Cole
Mr. Bill L. Davis
Mr. Zachary Max Fabish
Mr. Philip Stephen Gidiere III
Mr. Shaun Goho
Mr. Jeffrey Aaron Hall
Ms. Chloe H. Kolman
Mr. Matthew Lynn Kuryla
Mr. Justin Lee Matheny
Mr. Carl Grady Moore III
Ms. Elizabeth Baker Murrill
Ms. Kathleen Lea Riley
Mr. Joshua Smith
Mr. Joseph Scott St. John
Mr. Aaron Michael Streett

# United States Court of Appeals for the Fifth Circuit

No. 23-60300

State of Texas; Texas Commission on Environmental Quality; Public Utility Commission of Texas; Railroad Commission of Texas; Association of Electric Companies of Texas; BCCA Appeal Group; Texas Chemical Council; Texas Oil & Gas Association; Luminant Generation Company, L.L.C.; Coleto Creek Power, L.L.C.; Ennis Power Company, L.L.C.; Hays Energy, L.L.C.; Midlothian Energy, L.L.C.; Oak Grove Management Company, L.L.C.; Wise County Power Company, L.L.C.; State of Louisiana; Louisiana Department of Environmental Quality; State of Mississippi; Mississippi Department of Environmental Quality; Mississippi Power Company,

*Petitioners*,

*versus*

United States Environmental Protection Agency; Michael S. Regan, *Administrator, United States Environmental Protection Agency*,

*Respondents*.

Petition for Review from an Order of the
Environmental Protection Agency
Agency No. 88 Fed. Reg. 36654

ORDER:

IT IS ORDERED that the motion of Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network and Sierra Club for leave to intervene on behalf of Respondents is GRANTED.

IT IS FURTHER ORDERED that the motion of Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network and Sierra Club to extend the time for filing a consolidated response to the Texas and Mississippi Petitioners' motions for stay, etc., until July 10, 2023, is GRANTED.

*Leslie H. Southwick*

LESLIE H. SOUTHWICK
*United States Circuit Judge*

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 16-1406** **September Term, 2016**

**EPA-81FR74504**
**EPA-81FR67190**
**EPA-80FR75706**

**Filed On: January 31, 2017** **[1658440]**

State of Wisconsin, et al.,

Petitioners

v.

Environmental Protection Agency and Regina A. McCarthy, Administrator, United States Environmental Protection Agency,

Respondents

------------------------------

American Lung Association, et al.,
Intervenors

------------------------------

Consolidated with 16-1410, 16-1428, 16-1429, 16-1432, 16-1435, 16-1436, 16-1437, 16-1438, 16-1439, 16-1440, 16-1441, 16-1442, 16-1443, 16-1444, 16-1445, 16-1448

## O R D E R

Upon consideration of the motions for leave to intervene filed by:

Environmental Committee of the Florida Electric Power Coordinating Group, Inc. Duke Energy Carolinas, LLC, Duke Energy Progress, LLC, Murray Energy Corporation, American Lung Association, Appalachian Mountain Club, Environmental Defense Fund, Sierra Club, Cedar Falls Utilities, State of Maryland, State of New Hampshire, State of New York, State of Vermont, State of Rhode Island, Commonwealth of Massachusetts,

it is **ORDERED** that the motions be granted.

Circuit Rules 28(d) and 32(a)(2) govern the filing of briefs by intervenors. A schedule for the filing of briefs will be established by future order. That order will

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 16-1406** **September Term, 2016**

automatically provide briefing only for intervenors on the side of respondents. Any intervenor(s) intending to participate in support of petitioners must so notify the court, in writing, within 14 days of the date of this order. Such notification must include a statement of the issues to be raised by the intervenor(s). This notification will allow tailoring of the briefing schedule to provide time for a brief as intervenor on the side of petitioners. Failure to submit notification could result in an intervenor being denied leave to file a brief.

Intervenors supporting the same party are reminded that they **must** file a joint brief or certify to the court why a separate brief is necessary. Intervenors' attention is particularly directed to D.C. Circuit Handbook of Practice and Internal Procedures 38 (2016), which describes "unacceptable" grounds for filing separate briefs. Failure to comply with this order may result in the imposition of sanctions. See D.C. Cir. Rule 38.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Ken R. Meadows
Deputy Clerk

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 11-1302** **September Term 2011**

**EPA-76FR48208**
**EPA-47FR45210**

**Filed On: October 12, 2011** **[1334766]**

EME Homer City Generation, L.P.,

Petitioner

v.

Environmental Protection Agency,

Respondent

------------------------------

American Lung Association, et al.,
Intervenors

------------------------------

Consolidated with 11-1315, 11-1323,
11-1329, 11-1338, 11-1340, 11-1350,
11-1357, 11-1358, 11-1359, 11-1360,
11-1361

**<u>O R D E R</u>**

Upon consideration of the motions for leave to intervene filed by:

Public Service Enterprise Group, Inc.

Exelon Corporation

American Lung Association

Clean Air Council, Environmental Defense Fund, Sierra Club

Calpine Corporation

Natural Resources Defense Council

it is **ORDERED** that the motions be granted.

USCA Case #11-1302 Document #1336076 Filed 10/19/2011 Page 2 of 2

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 11-1302** **September Term 2011**

Circuit Rules 28(d) and 32(a)(2) govern the filing of briefs by intervenors. A schedule for the filing of briefs will be established by future order. That order will automatically provide briefing only for intervenors on the side of respondents. Any intervenor(s) intending to participate in support of petitioners must so notify the court, in writing, within 14 days of the date of this order. Such notification must include a statement of the issues to be raised by the intervenor(s). This notification will allow tailoring of the briefing schedule to provide time for a brief as intervenor on the side of petitioners. Failure to submit notification could result in an intervenor being denied leave to file a brief.

Intervenors supporting the same party are reminded that they **must** file a joint brief or certify to the court why a separate brief is necessary. Intervenors' attention is particularly directed to D.C. Circuit Handbook of Practice and Internal Procedures 38-39 (2011), which describes "unacceptable" grounds for filing separate briefs. Failure to comply with this order may result in the imposition of sanctions. See D.C. Cir. Rule 38.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Heather T. Stockslager
Deputy Clerk

No. 23-1201

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF WISCONSIN,

Petitioner,

v.

UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY and MICHAEL S. REGAN,
Administrator, United States
Environmental Protection Agency,

Respondents.

**PETITION FOR REVIEW**

Pursuant to Clean Air Act Section 307(b)(1), 42 U.S.C. § 7607(b)(1), the Administrative Procedure Act, 5 U.S.C. § 702, Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15, the State of Wisconsin hereby petitions this Court for review of the Final Rule of the U.S. Environmental Protection Agency and Administrator Michael S. Regan, published in the Federal Register at 88 Fed. Reg. 36,654 (June 5, 2023) (EPA Docket No. EPA-HQ-OAR-2021-0668), titled "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality." A copy of the rule is attached to this petition.

This Court has jurisdiction, and is a proper venue for this action, under 42 U.S.C. § 7607(b)(1).

Dated this 3rd day of August 2023.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General
State Bar #1084731

SARAH C. GEERS
Assistant Attorney General
State Bar #1066948

Attorneys for Petitioner

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904 (GJK)
(608) 266-3067 (SCG)
(608) 294-2907 (Fax)
johnsonkarpg@doj.state.wi.us
geerssc@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on August 3, 2023, I electronically filed the foregoing Petition For Review with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

I further certify that two copies of the above document were mailed to:

THE HONORABLE MICHAEL S. REGAN
OFFICE OF THE ADMINISTRATOR (1101A)
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
1200 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20460

THE HONORABLE MERRICK GARLAND
ATTORNEY GENERAL OF THE UNITED STATES
UNITED STATES DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530-0001

OFFICE OF GENERAL COUNSEL (2310A)
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
1200 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20460

Dated this 3rd day of August 2023.

Electronically signed by:

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General